Next matter on our calendar is Walston and Valentine v. The City of New York and others. Thank you. Thanks. Thanks. Good morning. Good morning. May it please the court, my name is Alan Levine. I'm the attorney for the appellants, Kevin Walston, Angelica Valentine, and their two children. The key point here, your honors, is that there was no indicia of criminal activity. The landlord said they didn't have a right to be there. Your honor, that person was not the landlord, it was not the person they had signed the lease with. Whoever that person was, he supposedly told the police that the entire building was supposed to be vacant. Right. And it turned out- Is there evidence that the police knew that he, the landlord, was not the landlord? No, there is no evidence of that except he's listed as the custodian. Sorry, where is he listed as the custodian? I was unclear. MM, I thought, was the person who was consulted twice and who advised- Who was MM? It was in the supporting deposition for the criminal court. He's listed as the custodian of the premises. What does that mean? It's a vague term. Is he the landlord? Is he the janitor? Is MM the custodian? Yeah, he's not the person who signed the lease, as I pointed out. But the lease is actually signed by someone whose initials are MM. Michael McKay is what it looks like. Yes. And I understood that there was testimony, I guess, that MM had been twice consulted by the police and had advised that no one was supposed to be present on the premises. Yet here we have a lease and- But they didn't produce the lease when the police came. Your Honor, a husband, a wife, two really young children raided by the emergency services unit who did totally overwhelming the whole building looking for someone involved in shooting a police officer. What did the police say? Do you have a lease? So there was mutual mistake there, right? The police didn't say, well, you're here. You appear to be living here with your children. Do you have a lease? They never said that. No, they didn't. And, Your Honor, it's living there with their children is not what the statute contemplates. The statute- Is there any authority actually in New York law saying that the criminal trespass law doesn't apply to illegal occupants of a building? I could not find a case that specifically dealt with living in a building if you don't have a lease. But all the cases that I did find and that I cited had to do with the indicia of burglary, basically, or being in a premises for the wrong purposes. Not living there, not having all the indicia of that being your residence and that being where you live with your family. And so as an example, one of the cases cited by the appellees is New York against Williams, which had to do with a group of protesters who occupied the governor's New York City office back in 1969. And there, the arresting officers did not realize that the protesters had been told, yeah, a certain amount of you can come and sit in on this meeting that's going on. There were all the indicia of the crime being committed under the statute which then existed. Here, we don't have that indicia. We don't have- Even recognizing that a mistake was made in very upsetting circumstances, to prevail in a 1983 claim, you have to show that the officer didn't have arguable probable cause to make the arrest. I'm having trouble understanding exactly on what basis you contend that he didn't have arguable probable cause. I would say he did not have arguable probable cause because it was obvious to an officer, should have been obvious to this officer who himself testified at his deposition, that he had at least once assisted city marshals in an eviction proceeding. But the availability of eviction doesn't preclude prosecution for criminal trespass, does it? Your Honor, it is a civil matter. It is under the landlord and tenant law. And there are cases that I cite. One of the cases cited in my brief is one where the police come to evict someone. I'm sorry. The police arrest someone for criminal trespass and then see that he's packing up his clothing, he's packing up his property, and it is then held that there should not be summary judgment because that was not sufficient. It was clear that he was someone who lived there and did not meet the indicia of trespassing. There's also the Smith against Nassau. I mean, the problem is that in this case there's someone who appears, and there's no dispute that the police officer appeared to be the landlord, and the landlord says specifically these people are not entitled to be on these premises. In fact, no one is entitled to be on these premises. And maybe we can quibble about whether the police displayed good judgment or bad judgment, but what's before us is whether they had arguable probable cause just based on that conversation with landlord and the inability of the family to produce a lease at the time. And yet the building is full. This is not the only family evicted. There are other apartments occupied in that building, and the entire building is emptied out, Your Honor. It isn't just my clients. So who is M.M. and who is the owner of the building? Do you now know? The owner of the building, I don't know who this M.M. is. I know that the owner of the building, the landlord, is the person who signed the lease, which is on pages 8, 1040, and 1041. Michael McKay and my client. And have you considered suing him instead of the city of New York? I'm just asking. I'm only handling the appeal. So I didn't make those preliminary considerations, Judge Bullard. It seems to me if he told the police, whoever he is, twice that there should be no one in the building, that he is the one that really caused the damage to your clients. Your point is well taken, but certain things . . . Certain things are the way they are. Yes. Yes. So I think what it comes down to is we've got issues of fact here that justify remanding this case, and that obviate summary judgment, and that show that there was not arguable probable cause, and that this case should go back to the Eastern District and should be litigated fully. Thank you. Thank you. We have reserved a minute for rebuttal. Yes. We'll hear from the city. Please support Antonella Carlin for the city. The district court correctly granted summary judgment. There are no disputed facts as to whether or not Officer Carieri had probable cause to arrest. Do you think it would have been appropriate for him to say, I see you living here, do you have a lease? Would it have been appropriate? I think it would have been appropriate if he had asked. He didn't, and he had no . . . I don't think it would have been mandated in any event, but it would have been nice if he had said, do you have a lease? At the time, he hadn't been in the apartment, so he was outside. He had been called in as backup because they were searching for a suspect in a police shooting. So he was outside. What he knew was that the owner of the building had signed an affidavit giving them permission to search the building and had also indicated that no one was to be in the building. Then he saw the plaintiffs come out with an officer who told them that they had been in one of the apartments. He asked . . . at that point, I think his partner again called the owner, who again confirmed that no one was supposed to be in the building. He then . . . Did he see anyone else in the building, any other occupants or tenants? I think he . . . according to his deposition, I believe he saw other people being escorted out of the building as well. There's no dispute that there were people in the building. He had some doubts in his mind about what M.M. was talking about when he said there should be no one in the building. Yes. More than this family. So then he asked them for their addresses, and they provided him identification that listed addresses as other than this building, at which point . . . But was it apparent from what was visible that people were actually living there? It wasn't just people were passing through momentarily, right? Well, so he . . . I don't know at some point if he went into the building, but at the time leading up, you know, before the arrest, he hadn't been in the building. He was outside as backup. They were on the second floor inside their apartment. Yes. And, they were found there, and another police officer escorted them to Officer Cariri and told that they were found in the building. And then, his partner called the owner to confirm that no one was supposed to be in the building. Again, he said no one was supposed to be in the building, at which point Officer Cariri asked them for their address. It was not the right . . . it was not 1039 Belmont or . . . 1029. And, they gave him identification. They never . . . when he asked for their address, they didn't say, oh, we live here. We live in this building. We have a lease. They gave him identification that listed their addresses. He was never inside the building? I think at some point after the arrest, he actually went in. During . . . But, yes, he was . . . Until the arrest . . . He was never . . . At the time of the arrest, he was not . . . he was never inside the building. Yes, that's correct, because he had been called in as backup for the search. So, given what he knew at the time, it was entirely reasonable for him to think that they were there without license or privilege. Do you have any sense of how frequent it is to make an arrest for a criminal trespass of someone who appears to be residing in a location? You mean squatters? It's . . . So, I think under the property law, squatters are considered trespassers. So, even if he had known that there was furniture there, at most . . . There were children. It was a family. And that they could be squatting, in which case they are still considered trespassers under the property law, and you don't have to go through the housing court to get them evicted. You can arrest people for . . . Do you have any sense of information of whether it's common to make an arrest for a criminal trespass? I don't. I don't know how often, but I know that the police often go through abandoned buildings and, you know, for squatters. I don't know how often the arrests are made and the criminal proceedings that are carried on. But, the undisputed facts here are dispositive of his claims. It was entirely reasonable to think that they were trespassing and that the officer had probable cause to arrest and also to prosecute. Did they eventually find the person who they were looking for? That is, the police officers? Yes. They found him . . . According to the police reports, he was in the closet in the apartment that the plaintiffs were found. The person that they were looking for? Yes. If there are no further questions . . . Thank you. Thanks. Mr. Levine, you have one minute. First of all, I know there was someone in the apartment who was found in the closet. I'm not sure that that was the person who they were looking for, for shooting the police officer in another location. The only thing I want to point out is that as counsel points out in Apelli's brief at page 15, the facts available at the time of arrest need only cause a person of reasonable caution to believe that a crime had been or was about to be committed. I don't think this officer exhibited reasonable caution. Is there any dispute that he was outside of the building up until and at the time of the arrest? No. No, there's no dispute. So here we have the police relying on, well, someone else told him and someone else told them, and we had emergency service unit and local precincts and so on. And sometimes it occurs to me that this should work two ways, that a police officer shouldn't be allowed to say, well, I'm relying on what someone else told me, that that's a way of getting inaccurate information. And it's a way of causing people to be arrested when there is actually no probable cause and they haven't done anything wrong. Thank you. Thank you both for reserved decision. The next matter on our calendar.